UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MILDRED REAVES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:22-CV-839 RLW ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

Plaintiff Mildred Reaves brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq. and for supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq. For the reasons that follow, the decision of the Commissioner is affirmed.

### I. *Procedural History*

On November 8, 2018, Plaintiff protectively filed her application for DIB under Title II. (Tr. 247-49). Plaintiff alleged she had been unable to work since October 1, 2014, due to a dislocated right shoulder; fractured right humerus, ulnar neuritis, anxiety, ADHD, and trigger finger on right hand. (Tr. 93, 247-49).[1] Plaintiff's application was denied on initial consideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff and counsel appeared for a hearing on June 11, 2021. (Tr. 51-83). Plaintiff testified concerning her disability, daily activities, functional limitations, and past work. Id. The ALJ also received testimony from

---

[1]On January 5, 2019, Plaintiff changed her alleged disability onset date to November 30, 2016. (Tr. 245). On March 25, 2021, Plaintiff again amended her onset date of disability to May 22, 2018. (Tr. 279).

vocational expert ("VE") James Israel. Id. On July 14, 2021, the ALJ issued an unfavorable decision finding Plaintiff not disabled. (Tr. 14-29). Plaintiff filed a request for review of the ALJ's decision with the Appeals Council.  On June 10, 2022, the Appeals Council denied Plaintiff's request for review. (Tr. 1).  Plaintiff has exhausted her administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner subject to judicial review. See 42 U.S.C. §§ 405(g), 1383(c)(3).

In this action for judicial review, Plaintiff claims the ALJ's decision is not supported by substantial evidence in the record as a whole.  Specifically, Plaintiff argues the ALJ's findings regarding Plaintiff's residual functional capacity ("RFC") are not supported by the medical evidence in that there were no expert medical opinions the ALJ found persuasive, and the ALJ improperly drew her own inferences about Plaintiff's functional ability from the medical records. Plaintiff further argues that the ALJ did not properly evaluative Plaintiff's subjective complaints of pain.  Plaintiff contends the ALJ did not consider her inability to pay for treatment, and in evaluating her complaints of pain, misconstrued evidence of Plaintiff's reported activities and engagement with medical treatment.  Plaintiff requests that the Commissioner's decision be reversed and the matter remanded for an award of benefits or for further evaluation.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses.  The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.  Legal Standard

To be eligible for DIB under the Social Security Act, plaintiff must prove she is disabled. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Baker v. Sec'y of Health & Hum. Servs., 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be declared disabled "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If the claimant is working, disability benefits are denied.  Second, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his or her ability to do basic work activities.  If the claimant's impairment is not severe, then he or she is not disabled.  Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1, the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 416.920(a)(4)(iii), (d).

At the fourth step, if the claimant's impairment is severe but does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the RFC to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." Martise v. Astrue, 641 F.3d 909, 923 (8th Cir. 2011); see also 20 C.F.R. § 416.945(a)(1). Ultimately, the claimant is responsible for providing evidence relating to his or

her RFC, and the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

In the fifth step, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production shifts to the Commissioner to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy. See Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. Id. In the fifth step, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016).

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001). The "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007) (internal

quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." Id. (internal quotation marks and citations omitted). Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." Reece v. Colvin, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." Id. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." KKC ex rel. Stoner v. Colvin, 818 F.3d 364, 370 (8th Cir. 2016).

### III.  The ALJ's Decision

In a decision dated July 14, 2021, the ALJ applied the above five-step analysis and found Plaintiff had not engaged in substantial gainful activity during the period from her amended alleged onset date of May 22, 2018, through her last insured date of June 30, 2021; Plaintiff has the severe impairments of degenerative disc disease with scoliosis, degenerative joint disease right shoulder, obesity, and carpal tunnel/cubital tunnel syndrome, status post release surgery on the right.  (Tr. at 16); and Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (Tr. 14).

As for Plaintiff's RFC, the ALJ found Plaintiff retained the ability to perform sedentary work as defined in 20 C.F.R. § 404.1567(a),[2] but that she had the following additional functional limitations:

---

[2]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in

never climb ropes, ladders, or scaffolds; occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, and crawl; with no exposure to unprotected heights or hazardous machinery; no overhead reaching or reaching behind the back with the right upper extremity; frequently reach in other directions with the right upper extremity; and, frequently handle, finger and feel with the right upper extremity.

(Tr. 20).

At the fourth step, the ALJ found Plaintiff was able to perform her past relevant work as a financial manager. (Tr. 28). Relying on the testimony of the VE, the ALJ found, "[T]his work did not require the performance of work-related activities precluded by the claimant's residual functional capacity." (Tr. 28). At the end of her analysis, the ALJ concluded Plaintiff was not disabled. (Tr. 25).

### *IV. Discussion*

In her Brief in Support of Complaint, Plaintiff argues the ALJ did not make her RFC determination based on substantial evidence in the record. Plaintiff contends the ALJ erroneously drew her own inferences from the medical evidence. She points to the fact that the two agency experts concluded there was insufficient evidence to make an RFC determination, and the ALJ found the opinion of Plaintiff's treating medical provider to be unpersuasive.[3] Plaintiff argues the ALJ failed to adequately develop the record regarding Plaintiff's functional abilities. In addition, Plaintiff argues the ALJ wholly failed to consider Plaintiff's inability to afford treatment and improperly discounted her subjective complaints of pain.

---

carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

[3]Plaintiff does not challenge the ALJ's evaluation of the opinion of Jay Liss, M.D., Plaintiff's treating psychiatrist. Dr. Liss did not offer an opinion as to Plaintiff's physical impairments or exertional limitations.

6

A. **RFC and Legal Analysis**

The RFC is what a claimant can do despite his or her limitations and includes an assessment of physical abilities and mental impairments. 20 C.F.R. §§ 404.1545, 416.945. The RFC is a function-by-function assessment of an individual's ability to do work-related activities on a regular and continuing basis. SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996). "[A]lthough medical source opinions are considered in assessing RFC, the final determination of RFC is left to the Commissioner." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians, and the claimant's own descriptions of his or her limitations. Combs v. Berryhill, 878 F.3d 642, 646 (8th Cir. 2017); Pearsall, 274 F.3d at 1217. According to the Eighth Circuit, "Ultimately, the RFC determination is a 'medical question,' that 'must be supported by some medical evidence of [the claimant's] ability to function in the workplace.'" Noerper v. Saul, 964 F.3d 738, 744 (8th Cir. 2020) (quoting Combs, 878 F.3d at 646); see also Steed v. Astrue, 524 F.3d 872, 875 (8th Cir. 2008) (ALJ's RFC assessment must be supported by medical evidence). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. See Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001) (some medical evidence must support the determination of the claimant's RFC). An ALJ's RFC determination should be upheld if it is supported by substantial evidence in the record. See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006).

While Plaintiff bears the burden to establish her RFC, Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004), the ALJ has an independent duty to develop the record, despite the claimant's burden. Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The ALJ must neutrally develop the facts."). "[T]he ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace.'" Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th

7

Cir. 2004) (quoting Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)).  In some cases, the duty to develop the record requires the ALJ to obtain additional medical evidence, such as a consultative examination of the claimant, before rendering a decision.  See 20 C.F.R. §§ 404.1519a(b), 416.945a(b).  The ALJ's duty extends even to cases where the claimant is represented by an attorney at the administrative hearing.  Id., Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004) (citing Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983)).  "An ALJ is required to obtain additional medical evidence if the existing medical evidence is not a sufficient basis for a decision." Naber v. Shalala, 22 F.3d 186, 189 (8th Cir. 1994).  However, "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." Id.; accord Haley v. Massanari, 258 F.3d 742, 749–50 (8th Cir. 2001).

Plaintiff does not object to the ALJ's evaluation of the medical opinions in this case.  Instead, she faults the ALJ for not relying on any medical opinions.  Plaintiff contends the ALJ improperly based Plaintiff's RFC on her own interpretation of the medical records.  Plaintiff argues her claim must be remanded for further development of the record.

Plaintiff is correct that the record is devoid of opinion evidence from a medical source with regard to Plaintiff's physical ability to function in the workplace.[4]  However, the absence of a

---

[4]The AJL considered the expert opinions in the record and wrote the following in her decision:

> As for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings as follows: The State agency medical and psychological consultants found insufficient evidence was provided, given [Plaintiff's] failure to return her function report, upon which to base a finding of severity. [ ] The undersigned finds this is not persuasive as additional medical evidence, including the claimant's testimony at the hearing, was sufficient to make a finding.

8

medical opinion supporting the RFC does not require remand. See Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016) (there is no requirement that an RFC finding be supported by a specific medical opinion). The Eighth Circuit has consistently affirmed decisions without specific medical opinions, if there was other evidence in the record, including medical evidence, to support the RFC determination. See Myers v. Colvin, 721 F.3d 521, 526–27 (8th Cir. 2013) (affirming RFC determination where ALJ had discounted opinion from medical provider); Perks v. Astrue, 687 F.3d 1086, 1092–93 (8th Cir. 2012) (affirming decision by ALJ, who had rejected opinion of medical consultant and based RFC determination on medical record and claimant's reported activities); Zeiler v. Barnhart, 384 F.3d 932, 936 (8th Cir. 2004) (lack of opinion evidence not fatal to RFC determination where ALJ properly considered available medical and testimonial evidence); Sampson v. Apfel, 165 F.3d 616, 619 (8th Cir. 1999) (affirming decision where ALJ discounted the only medical opinion, because there was substantial evidence in the record as a whole to support ALJ's RFC determination). An ALJ is not required to seek clarification in the absence of medical opinions where medical records and other evidence support the RFC determination. Cox v. Astrue, 495 F.3d 614, 619–20 (8th Cir. 2007).

Federal regulations require ALJs to evaluate "the extent to which [a claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [a

---

(Tr. 28)

During the administrative proceedings in this case, Plaintiff failed to complete an Activities of Daily Living Report, despite being requested to do so on a number of occasions. See Form SSA-3373, https://www.ssa.gov/forms/ssa-3373-bk.pdf. On February 20, 2019, James Morgan, Ph.D., an agency psychologist, reviewed the available record at the time and noted there was inadequate evidence to make a determination as to Plaintiff's RFC due to her "[F]ailure [T]o [C]ooperate." (Tr. 87). And on February 21, 2019, Daniel Gwartney, M.D., an agency doctor, noted that the absence of functional data precludes an RFC determination. (Tr. 87).

claimant's] symptoms affect [the claimant's] ability to work." 20 C.F.R. §§ 404.1529, 416.929. In other words, an ALJ is required to review and evaluate the medical evidence to determine an individual's ability to do work-related activities.

In her decision, the ALJ discussed in detail Plaintiff's medical records. The ALJ found Plaintiff retained the RFC to perform a reduced range of sedentary work. In formulating the RFC, the ALJ took into account Plaintiff's limitations stemming from degenerative disc disease with scoliosis, degenerative joint disease in her right shoulder, obesity, and post-surgical cubital tunnel syndrome. The ALJ explained that Plaintiff's most serious symptoms stemmed from the injury to her right shoulder, which she accommodated by limiting Plaintiff to the lifting restrictions of sedentary work and by incorporating additional reaching restrictions. The ALJ accommodated Plaintiff's other limitations as well, including her obesity, by limiting Plaintiff to "no ropes, ladders, or scaffolds; occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, and crawl; with no exposure to unprotected heights or hazardous machinery." (Tr. 20).

Plaintiff argues that the ALJ did not explain how the objective medical findings supported her RFC determination. The Court does not agree. In formulating Plaintiff's limitations, the ALJ carefully considered Plaintiff's medical records and discussed numerous medical test results and observations made during physical examinations. The ALJ pointed to evidence showing "pain free gentle range of motion" and normal hand and elbow motion. (Tr. 24). The ALJ noted Plaintiff had some reduced grip strength with the right hand but full grip strength on the left and was otherwise normal. (Tr. 25). The ALJ also noted Plaintiff's right shoulder improved with physical therapy ("PT"), although Plaintiff discontinued the therapy against the recommendation of her doctors. (Tr. 22, 23, 27). The ALJ also pointed to the fact that Plaintiff's treatment generally

10

controlled her symptoms, and there was no evidence in the record that physical restrictions had been recommended or placed on her by any of her medical providers.[5]

In this case, the ALJ did what the law requires. This Court finds the ALJ properly evaluated the record taken as a whole and, in her RFC determination, she accounted for Plaintiff's impairments that were supported by evidence in the record. The evidence included objective medical findings, examination findings, Plaintiff's response to treatment, and her reported activities, which provide substantial evidence in support of the ALJ's RFC finding. No additional medical opinion was required, and no further development of the record was necessary. Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995) (reversal due to failure to develop the record is warranted only where such failure is unfair or prejudicial). In cases where the evidence is consistent and sufficient to determine disability, no further development is required. See 20 C.F.R. §§ 404.1520b and 416.920b. The Court finds the ALJ's determination that Plaintiff could perform work at a sedentary exertion level with some additional limitations is supported by substantial evidence in the record as a whole.

      **B.**    **Non-Compliance with and Lack of Medical Treatment**

When weighing Plaintiff's subjective complaints of pain, the ALJ considered the fact that Plaintiff was not compliant with medical treatment and recommendations. The ALJ correctly observed that Plaintiff discontinued PT although she was referred to PT by a number of providers and, throughout the record, Plaintiff reported that it improved her symptoms. Plaintiff also refused referrals to pain management. Plaintiff argues that her noncompliance was justified because she lacked medical insurance and could not afford the prescribed medical treatment. She argues the

---

[5]On July 12, 2019, Dr. Liss, Plaintiff's psychiatrist, wrote a letter in which he stated that it was his opinion Plaintiff should be excused from jury duty, as "[s]he does not have the persistence or concentration to serve as a juror." (Tr. 553).

ALJ erred in her decision in that she wholly failed to consider Plaintiff's inability to afford treatment.

At the hearing, Plaintiff's attorney stated that at some point in time Plaintiff lost her insurance "or financial assistance that she had through Mercy." (Tr. 58). There is also evidence in that record that Plaintiff was denied Medicaid, which may have been due to excess resources. (Tr. 493).

It is unclear from the record when Plaintiff lost her insurance or financial assistance. Between May 2018 and July 2019, Plaintiff visited her medical providers fairly regularly. During this time, she visited her orthopedic surgeon, Matthew Baker, M.D., eight times, (Tr. 351, 352, 364, 378, 394, 410, 501 & 502), and her primary care doctor, Preethi Shmeidler, M.D., six times (Tr. 343, 348, 369, 380, 511 & 521). In the summer of 2018, following her fall and the procedure to put her shoulder back in place, Plaintiff was referred to PT. Plaintiff went to PT in the summer of 2018, and it is undisputed that Plaintiff reported improvement with the therapy. Plaintiff, however, stopped going to PT in September 2018, despite the fact that she continued to see her other medical providers through July 2019. During this time, Plaintiff's providers recommended that she return to PT, but Plaintiff did not do so.

Plaintiff's medical treatment stopped abruptly in July 2019. There is no evidence that Plaintiff sought medical treatment for her physical impairments between July 2019 and January 2021.[6] On January 18, 2021, Plaintiff returned to her primary care physician, Dr. Shmeidler, for a physical. (Tr. 561). In Dr. Shmeidler's exam notes from that visit, there is no evidence Plaintiff complained of shoulder pain. Dr. Shmeidler did note that Plaintiff had chronic neck pain, although

---

[6]When Plaintiff did return to her primary care physician, she reported that she had since obtained a medical marijuana card. It is not clear from the record when Plaintiff obtained the card, for what symptom or impairment it was prescribed, or from which medical provider. (Tr. 562-65).

she had a normal range of motion. (Tr. 564). Dr. Shmeidler prescribed Tizanidine, and Plaintiff was told to return in six months. (Tr. 565-66).

In her decision, the ALJ did not find Plaintiff was otherwise disabled, but for her failure to comply with treatment that would be expected to restore functioning. Rather, the ALJ considered Plaintiff's failure to pursue treatment along with a number of other factors in determining whether Plaintiff's subjective complaints of pain were inconsistent with the record. Under Eighth Circuit law, an ALJ may consider noncompliance as a factor when evaluating subjective complaints. Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005) ("failure to follow [a] recommended course of treatment [ ] weighs against a claimant's credibility") (citing Gowell v. Apfel, 242 F.3d 793, 797 (8th Cir. 2001)); Wildman v. Astrue, 596 F.3d 959, 968–69 (8th Cir. 2010) (permissible for ALJ to consider claimant's non-compliance with prescribed medical treatment); Choate v. Barnhart, 457 F.3d 865, 872 (8th Cir. 2006) ("an ALJ may properly consider claimant's . . . failing to take prescription medications, seek treatment, and quit smoking.").

Further, Plaintiff's argument that the ALJ wholly failed to consider her inability to afford treatment is false. The ALJ noted throughout the decision that Plaintiff alleged she could not obtain treatment due to insurance issues. For example, in her decision the ALJ wrote the following:

> [Plaintiff] describes a history of hypertension, though 13 months ago had to stop taking Lisinopril-Hctz since she lost medical insurance and her last primary care. … [Plaintiff] reported she was still having pain and tingling in the right arm and she had been referred to neurosurgery, though she had no insurance and there is no neurosurgeon who will see her on Mercy financial assistance. … [Plaintiff] had a known history of degenerative disc disease but was unable to establish with a neurosurgeon because of her lack of insurance. … Plaintiff has not done recent physical therapy or injections due to insurance issues.

(Tr. 20, 25-26) (quotations omitted).

The ALJ did consider Plaintiff's lack of insurance in her decision. Furthermore, the ALJ's statement that Plaintiff was non-compliant with her medical treatment is also supported by the records, and there is evidence at least some of Plaintiff's non-compliance was not due to an

13

inability to pay.  Plaintiff was prescribed PT and pain management at the time she did have insurance or was receiving financial assistance, and she did not go to these.  The ALJ acknowledged the 18-month gap in medical care, when it appears Plaintiff did not have any insurance or financial assistance.  But there is evidence that when Plaintiff returned to her doctor her symptoms had improved even with the lapse of treatment, and she no longer complained of pain in her shoulder.  Plaintiff's non-compliance and lack of treatment were among many factors the ALJ considered in her decision, and the Court finds Plaintiff's argument that the ALJ failed to consider Plaintiff's inability to afford care when she found Plaintiff was non-compliant with medical treatment is without merit.  See Whitman v. Colvin, 762 F.3d 701, 706 (8th Cir. 2014).

      C.      **Evaluation of Subjective Complaints of Pain**

Plaintiff also argues that the ALJ erroneously discounted her subjective complaints of pain.  Citing Kelley v. Callahan, 133 F.3d 583, 588 (8th Cir. 1998), Plaintiff asserts the ALJ must make an express "credibility" determination detailing the reasons she discredited her testimony regarding pain, and discuss the factors outlined in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  (ECF No. 14 at 9-10).  Plaintiff contends the evidence does not support the ALJ's finding that Plaintiff was generally not receiving the treatment one would expect for a totally disabled individual or that her symptoms improved with treatment.  Plaintiff also argues that the ALJ did not properly explain how Plaintiff's reports of strenuous activities were inconsistent with her self-reports of pain.

Social Security Ruling 16-3p eliminated the word "credibility" from the analysis of subjective complaints, replacing it with "consistency" of a claimant's allegations with other evidence. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. § 404.1529.  The Rule does incorporate the familiar Polaski factors that previously guided an ALJ's analysis of subjective complaints, including: objective medical evidence, the claimant's work history, and other evidence

relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the symptoms (i.e., pain); (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) any functional restrictions. See Schwandt v. Berryhill, 926 F.3d 1004, 1012 (8th Cir. 2019).

If the evidence as a whole "undermines" or "cast[s] doubt on" a claimant's testimony, an ALJ may decline to credit a claimant's subjective complaints. Id.  If the ALJ explicitly discredits a claimant's subjective complaints and gives good reasons, the Eighth Circuit has held it will defer to the ALJ's judgment, even if the ALJ does not cite to Polaski or discuss every factor in depth. See Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007); Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). "If an ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so, we will normally defer to that judgment." Karlix v. Barnhart, 457 F.3d 742, 748 (8th Cir. 2006) (cleaned up).

The ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent.  In her decision, the ALJ points a number of factors to support her determination, including: (1) the fact that the record reveals relatively infrequent trips to the doctor for disabling symptoms; (2) the lack of object findings that rise to the level of disabling pain; (3) Plaintiff's reports of strenuous activities; (4) Plaintiff's failure to follow up with treatment, such as physical therapy and pain management; (5) the fact that Plaintiff's treatment has been generally successful; (6) the fact that testimony about Plaintiff's daily activities cannot be verified because she failed to complete the Daily Living Report; and (7) the fact that none of Plaintiff's treating physicians ever placed restrictions on her activities.

Plaintiff argues the evidence does not support the ALJ's finding that her treatment was generally successful in controlling her symptoms.  The Court does not agree.  As Defendant points out, there is evidence in the record that Plaintiff's treatment was improving her symptoms.  For

15

example, in October 2018, Plaintiff reported improved range of motion as well as "extensive pain relief" after she underwent a nerve block. (Tr. 21, 59, 351-52). She had pain-free gentle range of motion of her shoulder, normal hand and elbow motion, and neurovascular examination was intact in October 2018. (Tr. 352). In January 2019, Plaintiff had improved shoulder pain and improved range of motion. (Tr. 501, 503). There was also no swelling or atrophy of her shoulder. (Tr. 507). The following month, she had 4/5 grip strength on the right and 5/5 on the left. (Tr. 512). At a March 2019 emergency room visit, Plaintiff had tenderness to palpation and limited range of motion of her cervical spine, but full range of motion of all of her joints (Tr. 516). Her strength was 4/5 in her right arm, but full in her other extremities (Tr. 516). Before her visit to the ER, Plaintiff had not taken any pain medication at home, but she indicated that she felt much better after ER staff provided pain medication and a steroid. (Tr. 517). Plaintiff also testified that she had a medical marijuana card and marijuana helped with her pain. (Tr. 26, 69, 562). At the time of the hearing, Plaintiff testified she was using primarily over-the-counter medications and medical marijuana to control her pain. (Tr. 327). Plaintiff also consistently reported improvement with PT, although she stopped going to recommended sessions. The evidence certainly suggests Plaintiff has some physical limitations that remained despite treatment – and for which the ALJ accounted in her RFC – but the evidence supports the ALJ's determination that Plaintiff was not as limited as she alleged because, in general, her symptoms improved with medical treatment.

  Finally, Plaintiff argues her reports of strenuous activities actually support her testimony of disabling pain rather than detracting from it. In her decision, the ALJ noted that in July 2018, approximately two months following the procedure on her shoulder, Plaintiff reported to her physical therapist that she had painted a room for four to five hours. (Tr. 404). Plaintiff also reported that she was rehabbing her house with her husband. (Tr. 407). And in September 2018, Plaintiff indicated she had scrubbed her floors and gone on a "cleaning frenzy." (Tr. 375).

16

Plaintiff argues this evidence supports her claim of disability because she reported to her physical therapist that she was stiff and sore from these activities. She also argues that the evidence does not suggest she is capable of performing these activities on a regular basis.

The Court concurs that this evidence does not support a finding that Plaintiff is capable of performing these activities on a daily basis, but the ALJ did not suggest that it does. Rather, the ALJ found this evidence was inconsistent with Plaintiff's testimony at the hearing. For example, Plaintiff testified that following her shoulder procedure, she was immobilized for months. (Tr. 59). She also testified that she could only lift her arm six to eight inches. Plaintiff testified that currently she can only grip a pencil for a short period of time, that she would drop a glass of water because she cannot feel what she is grasping in her hand, that her hand spasms and shakes while holding a phone, and she is exhausted from fighting pain all day. (Tr. 61-65). Evidence of scrubbing floors and painting for hours at a time is inconsistent with this testimony. Although activities of daily living are not sufficient on their own to prove a claimant retains the ability to work, they can support the ALJ's decision when considered in conjunction with the medical record. See Milam v. Colvin, 794 F.3d 978, 985 (8th Cir. 2015). The ALJ did not find that Plaintiff was able to perform strenuous or even relatively strenuous work on a sustained daily basis. Instead, the ALJ found Plaintiff is capable of performing sedentary work with additional restrictions, which is supported by substantial evidence on the record as a whole.

In sum, although the ALJ did not cite specifically to Polaski, she did "acknowledge[ ] and consider[ ] the factors before discounting [Plaintiff]'s subjective complaints." Moore v. Astrue, 572 F.3d 520, 524 (8th Cir. 2009). The ALJ appropriately discounted Plaintiff's allegations of disabling pain based on appropriate factors, including the objective medical evidence, evidence of non-compliance with medical treatment, reports of strenuous activities that were inconsistent with Plaintiff's testimony, improvements following treatment, and fact that Plaintiff's treating

17

physicians never placed restrictions on her activities. Grindley v. Kijakazi, 9 F.4th 622, 630 (8th Cir. 2021) (citation omitted). This evidence supported the ALJ's conclusion that Plaintiff's physical impairments were not as severe as she claimed, and the Court finds no error as to the ALJ's evaluation of Plaintiff's pain.

### V. Conclusion

The Court's task "is to determine whether the ALJ's decision 'complies with the relevant legal standards and is supported by substantial evidence in the record as a whole.'" Halverson v. Astrue, 600 F.3d 922, 929 (8th Cir. 2010) (quoting Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008)). The Court finds that in determining Plaintiff's RFC, the ALJ properly evaluated the evidence in the record, including the medical records, and that the RFC is supported by substantial evidence. The Court further finds that the ALJ did not impermissibly interpret raw data, but properly considered the objective medical evidence; Plaintiff's course of treatment, including non-compliance with medical treatment such as PT; inconsistencies in the record; and testimony about her daily activities. The record does contain conflicting evidence regarding the extent of Plaintiff's physical impairments, some of which might support limitations greater than those assessed by the ALJ, but the ALJ reasonably weighed the evidence in a manner consistent with the evidence and the regulations. Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006). It is not the Court's role to reweigh the evidence, and there is substantial evidence in the record as a whole to support the ALJ's RFC determination that Plaintiff is capable of performing sedentary work with added limitations. Reece, 834 F.3d at 908; Coleman, 498 F.3d at 770.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment will accompany this Memorandum and Order.

_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this  25th  day of September, 2023.